UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-20561-CR-SCOLA/VALLE

UNITED STATES OF AMERICA

    v.

CHRISTOPHER DALPE, et al.,

    Defendants.

_____

### REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE[1]

Presently before the Court is Defendant Christopher Dalpe's Motion to Suppress Identification (ECF No. 182) and Motion to Suppress Statements (ECF No. 183), which were assigned to the undersigned by the Honorable Robert N. Scola, Jr. *See* (ECF No. 203). The undersigned has reviewed the Motions, the United States' Response (ECF No. 199), and held an evidentiary hearing on January 29, 2014. Following the evidentiary hearing, Defendant's counsel withdrew the Motion to Suppress Statements (ECF No. 183). Accordingly, the undersigned recommends that the Motion to Suppress Statements (ECF No. 183) be **DENIED**. The undersigned now turns to Defendant's Motion to Suppress Identification (ECF No. 182), and recommends that the motion be **DENIED** for the reasons set forth below.

    **I.    FACTUAL BACKGROUND**

Defendant Dalpe has been charged in a superseding indictment with one count of conspiracy to distribute cocaine and cocaine base, in violation of Title 21, United States Code, Section 846 (Count 13); and four counts of distribution of cocaine and cocaine base, in violation of Title 21, United States Code, Section 841(a)(1) (Counts 14-17). *See* (ECF No. 102). The

---

[1] This Report and Recommendation is entered pursuant to 28 U.S.C. § 636(b)(1)(C). Docket Entry 221 is hereby vacated.

distribution counts of the indictment stem from four separate narcotics transactions on January 4, 2013 (Count 14), January 15, 2013 (Count 15), February 12, 2013 (Count 16), and February 21, 2013 (Count 17).

At the January 29, 2014 evidentiary hearing, an undercover agent (the "UC") working for the United States Immigration and Customs Enforcement's Homeland Security Investigations ("ICE–HSI") testified for the government. The UC testified that in late 2012, he was involved in an undercover investigation in which the UC purchased contraband through an individual named Saintonas Oscar, a/k/a "Todo." According to the UC, Saintonas Oscar would arrange or otherwise broker purchases of contraband between the UC and Oscar's associates.[2] The undercover deals typically involved Saintonas Oscar, the UC, and the individual seller of the contraband. The UC testified that he conducted between 15 to 20 purchases of contraband from the co-defendants during the investigation, with Saintonas Oscar acting as the broker on nearly all of the deals. Generally, the UC either received the contraband directly from the seller from whom Saintonas Oscar had arranged to acquire the goods, or from Saintonas Oscar, who had taken possession of the contraband from the seller.

The UC specifically testified regarding the four drug deals that allegedly took place between Saintonas Oscar, Defendant Dalpe, and the UC. During the first transaction on January 4, 2013, the UC admits that he did not see Dalpe in person, but did observe Dalpe's green Chevrolet sedan. During the January 15 transaction, however, the UC testified that he purposefully got out of his car and walked toward Dalpe in an effort to identify Dalpe. The UC testified that he looked at Dalpe for about five seconds through the windshield of the green

---

[2] On May 23, 2013, Saintonas Oscar was found dead in a residence next door to his own residence. The death remains the subject of an ongoing homicide investigation. As a result, Saintonas Oscar, the main target of the ICE-HSI investigation, is not a named defendant in the superseding indictment.

Chevrolet before returning to his own vehicle. The UC stated that it was his intention to see Dalpe's face, as part of his assignment was to identify the participants in the scheme.

Following both the January 4 and January 15 transactions, law enforcement officers did not know Dalpe's legal name, but knew him only as "Black," the nickname used by Saintonas Oscar to refer to Dalpe. In early February 2013, law enforcement ran a search of the green Chevrolet's tag number, which had been linked to "Black" through surveillance. Florida DMV records showed that the tag was registered to Christopher Dalpe. Thereafter, ICE-HSI Agent Jubal Gimble, the case agent, printed a photograph of Dalpe from the Florida DMV's records. On February 7, 2013, Agent Gimble showed the DMV photograph of Dalpe to the UC and asked the UC if he recognized the person in the picture. The UC, who had recently observed "Black" in the green Chevrolet during the January 15 transaction, identified the person pictured (Dalpe) as "Black."

## II.     THE MOTION TO SUPPRESS IDENTIFICATION

Pursuant to Federal Rule of Criminal Procedure 12(b), Dalpe has moved to suppress the UC's out-of-court photographic identification of "Black." Dalpe asserts that the identification was unduly suggestive and unreliable because the UC was shown only one picture. Dalpe argues that because the UC was shown only one picture, the outcome of the identification was suggested. *See* (ECF No. 182 at 1). The government responds that the witness who identified Dalpe—the UC—had previously seen Dalpe during the January 15 transaction, and was not being questioned about any particular incident or transaction at the time that he identified Dalpe's photograph as "Black." The government argues that the procedure was not impermissibly suggestive, and even if it were, that the identification was nonetheless reliable

3

because it was made by a trained law enforcement officer during the course of an undercover operation intended to identify sellers of illegal contraband. *See* (ECF No. 199 at 6, 8).

### III. THE PROCEDURE USED TO IDENTIFY DALPE WAS NOT IMPERMISSIBLY SUGGESTIVE AND THE IDENTIFICATION WAS RELIABLE

The admissibility of identification testimony when the witness has made an out-of-court identification is governed by a two-step analysis. *See United States v. Diaz*, 248 F.3d 1065, 1102 (11th Cir. 2001). First, the court must determine whether the original identification procedure was unduly suggestive. *Id*. If the court concludes that the procedure was suggestive, then the court must consider whether, under the totality of the circumstances, the identification was nonetheless reliable. *Id.*; *see also Cikora v. Dugger*, 840 F.2d 893, 895 (11th Cir. 1988). Factors to be considered in determining whether the identification was reliable include: (i) opportunity to observe; (ii) degree of attention; (iii) accuracy of the description; (iv) level of certainty; and (v) length of time between the crime and the identification. *Diaz*, 248 F.3d at 1102 (citing *Neil v. Biggers*, 409 U.S. 188, 199 (U.S. 1972)).

As to the first step, I find that the circumstances here indicate that the single photo identification was not impermissibly suggestive. Both the UC and Agent Gimble testified regarding the context in which the UC identified Defendant Dalpe. Each testified that the UC was not shown Dalpe's picture in the context of any conversation about "Black," nor was he asked whether the person pictured was "Black." The undersigned specifically rejects Dalpe's assertion that because the UC was shown only one photo, and not a group of photos, the outcome of the identification was somehow suggested. *See* (ECF No. 182 at 1). Agent Gimble did nothing to prompt the UC as to the identity of the person in the picture, and the UC testified that he immediately recognized the person in the photo as "Black" because he had an opportunity to

4

view him for about five seconds during a controlled purchase just a few weeks prior. Under these facts, the identification of "Black" by the UC was not impermissibly suggestive. *See United States v. Bissonette*, 164 F.3d 1143, 1145-56 (8th Cir. 1999) (affirming denial of motion to suppress identification made by undercover agent for several reasons, including that the agent: (i) had participated in numerous controlled buys; (ii) previously identified the defendant during a transaction; (iii) had the motive to carefully account for the defendant's appearance as the operation's goal was to identify various sellers; and (iv) there was no evidence that anything in the debriefing interview, where the identification took place, had prompted the agent to identify the defendant as the person pictured in the photograph); *see also United States v. Cervantes*, 08-CR-00314, 2010 WL 348031, at *2 (E.D. Ark. 2010) (denying motion to suppress identification made by law enforcement officer that "did not involve a line-up and was made by a single show up").

Moreover, even if the Court were to find the procedure was impermissibly suggestive—which I do not—the identification of Dalpe by the UC satisfies each of the *Biggers* factor and was therefore reliable. First, the UC testified both during direct and cross-examination that he watched Dalpe for five seconds through the windshield of Dalpe's green Chevrolet during the January 15 transaction. The UC also testified that he saw Dalpe in person during the February 12 and February 21 transactions. At no time following the February 12 or February 21 transactions with Dalpe did the UC question the accuracy of his February 7 identification of "Black." Second, like in *Bissonette*, the purpose of the undercover operation was to identify sellers of contraband. Thus, it makes perfect sense that the UC consciously and purposefully watched Dalpe on January 15 to help establish Dalpe's identity. Third, when asked to identify Dalpe, the UC did not hesitate when shown Dalpe's photograph. Fourth, the UC identified

Dalpe just weeks after the January 15 transaction when Dalpe's face was fresh in his mind, and would conduct two additional controlled purchases with Dalpe following the initial identification. Accordingly, each of the *Biggers* factors is satisfied, and the identification of Dalpe by the UC was reliable.

### IV. <u>RECOMMENDATION</u>

Consistent with the foregoing, the undersigned respectfully recommends that Defendant Christopher Dalpe's Motion to Suppress Identification (ECF No. 182) and Motion to Suppress Statements (ECF No. 183) be **DENIED**.

The parties may serve and file written objections to this Report and Recommendation with the District Judge within fourteen (14) days of being served with a copy. *See* 28 U.S.C. § 636(b)(1)(C). Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *See id.*; *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985).

**DONE AND ORDERED** in Chambers in Miami, Florida, on February 4, 2014.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Robert N. Scola, Jr.
All Counsel of Record